**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

CHAMBERS OF
J. Mark Coulson
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-7780
Fax (410) 962-1812

October 18, 2019

LETTER TO COUNSEL

     RE: *Patrick M. v. Commissioner, Social Security Administration*
           Civil No. 1:18-cv-03030-JMC

Dear Counsel:

On October 2, 2018, Patrick M ("Plaintiff") petitioned this Court to review the Social Security Administration's ("SSA") final decision to deny his claim for Disability Insurance Benefits. (ECF No. 1). I have considered the parties' cross-motions for summary judgment. (ECF Nos. 9 and 12). I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2018). This Court must uphold the decision of the SSA if it is supported by substantial evidence and if the SSA employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will deny Plaintiff's motion, grant the Government's motion, and affirm the Social Security Administration's judgment pursuant to sentence four of 42 U.S.C. § 405(g). This letter explains my rationale.

Plaintiff protectively filed his claims for benefits on August 13, 2014, alleging an onset date of February 13, 2014. (ECF No. 8-3 at 11). The claim was denied initially on January 13, 2015. *Id.* A hearing was held on July 21, 2017, before Administrative Law Judge ("ALJ") Jesus Ortis. (Tr. 46–79). Following the hearing, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act during the relevant time frame. (Tr. 18). The Appeals Council declined review (Tr. 1–6), and consequently the ALJ's decision constitutes the final, reviewable decision of the SSA.

In arriving at his decision to deny Plaintiff's claim, the ALJ followed the five-step sequential evaluation of disability set forth in the Secretary's regulations. 20 C.F.R. § 416.920. "To summarize, the ALJ asks at step one whether the claimant has been working; at step two, whether the claimant's medical impairments meet the regulations' severity and duration requirements; at step three, whether the medical impairments meet or equal an impairment listed in the regulations; at step four, whether the claimant can perform her past work given the limitations caused by her medical impairments; and at step five, whether the claimant can perform other work." *Mascio v. Colvin*, 780 F.3d 632, 634–35 (4th Cir. 2015). If the first three steps do not yield a conclusive determination, the ALJ then assesses the claimant's residual functional capacity ("RFC"), "which is 'the most' the claimant 'can still do despite' physical and mental limitations that affect her ability to work," by considering all of the claimant's medically

1

determinable impairments regardless of severity. *Id.* at 635 (quoting 20 C.F.R. § 416.945(a)(1)). The claimant bears the burden of proof through the first four steps of the sequential evaluation. If he makes the requisite showing, the burden shifts to the Social Security Administration at step five to prove "that the claimant can perform other work that 'exists in significant numbers in the national economy,' considering the claimant's residual functional capacity, age, education, and work experience." *Lewis v. Berryhill*, 858 F.3d 858, 862 (4th Cir. 2017) (internal citations omitted).

In this case, at step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since February 13, 2014. (Tr.12). At step two, the ALJ determined that during the relevant time period, Plaintiff suffered from the following severe impairments: "degenerative disc disease, knee impairment, and obesity." (Tr. 12). At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meet or medically equals the severity of one of the listed impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 13). Then, "[a]fter careful consideration of the entire record," the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to:
> [P]erform sedentary work as defined in 20 CFR 404.1567(a) except: the claimant can climb ramps and stairs occasionally, never climb ladders, ropes, or scaffolds, and never crawl; the claimant can never work at unprotected heights, and never around moving mechanical parts.

(Tr. 13).

Finally, at steps four and five, the ALJ determined that Plaintiff was unable to perform any past relevant work, but in considering age, education, experience, and RFC, "there are jobs that exist in significant numbers in the national economy that the claimant can perform." (Tr. 16–17). Therefore, the ALJ concluded that Plaintiff was not disabled during the relevant time frame. (Tr. 18).

The Court reviews an ALJ's decision to ensure that the ALJ's findings are supported by substantial evidence and were reached through application of correct legal standards. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," which "consists of more than a mere scintilla of evidence but may be less than a preponderance." *Id.* (internal citations and quotation marks omitted). In accordance with this standard, the Court does not "undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the ALJ." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (internal citations and quotations omitted). Instead, "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." *Id.*

Plaintiff makes two primary arguments on appeal, that the ALJ erroneously assessed Plaintiff's: (1) RFC; and (2) subjective symptoms. (ECF No. 9-1).

# RFC ASSESSMENT

In support of the contention that the ALJ erroneously assessed his RFC, Plaintiff asserts two sub-claims. (ECF No. 9-1 at 3–11). These claims are that the ALJ: (1) failed to include a narrative discussion setting forth a function-by-function analysis of Plaintiff's ability to perform work-related activities (*Id.* at 4–7); (2) erroneously evaluated the opinions of the State Agency physician, Plaintiff's treating physician, and the consultative examiner, who evaluated the Plaintiff's claim on behalf of the Commissioner. *Id.* at 8–9.

First, Plaintiff contends that under *Mascio v. Colvin*, 780 F.3d 632 (4th Cir. 2015), the ALJ failed to provide a function-by-function analysis to explain the RFC determination with regard to Plaintiff's physical and mental impairments. (ECF No. 9-1 at 4). Social Security regulations require an ALJ to "identify the [claimant's] functional limitations or restrictions and assess his . . . work related abilities on a function-by-function basis." *Mascio*, 780 F.3d at 636. To satisfy this requirement, the ALJ must include a "narrative discussion of the claimant's symptoms and medical source opinions" to support the RFC determination. *White v. Commissioner*, 2017 WL 1373236, at *1 (D. Md. Apr. 13, 2017).

As to the RFC analysis, the ALJ provided a three page written narrative on the RFC alone, in which he summarized Plaintiff's written statements and hearing testimony, made a credibility determination, reviewed the lack of evidence pertaining to Plaintiff's alleged problems with standing or sitting for extended periods of time, detailed Plaintiff's activities of daily living, reviewed the evidence (or, lack of) related to any mental limitations, and weighed the opinion evidence. (Tr. 13–16). Substantial evidence in the record, cited by the ALJ, supports the ALJ's function-by-function analysis of Plaintiff's work-related abilities. *Id.* For example, whereas Plaintiff argues that the ALJ failed to explain how he arrived at Plaintiff's ability to occasionally climb ramps and stairs, but never crawl (ECF No. 9-1 at 6), the ALJ discussed Plaintiff's knee surgeries, treatment records for his knee, and subsequent unremarkable physical examinations with only "occasional complaints of knee pain," and concluded that "the claimant's knee impairment can be accommodated by limiting him to sedentary work with limited climbing, no crawling, and limited exposure to hazards." (Tr. 15). *See, e.g.*, ECF No. 8-10 at 254; 268 (noting Plaintiff was "seated without distress and rises from sitting to standing without difficulty" and "ambulates without difficulty and no obvious gait deviation"). For the same reason, Plaintiff's argument that the ALJ failed to explain his determination that Plaintiff could never work at unprotected heights or around moving mechanical parts is unfounded. (ECF No. 9-1 at 6). The ALJ explained that while the evidence did not support a conclusion that Plaintiff was disabled, the limitation to sedentary work with limited postural activity "account[ed] for the claimant's chronic back pain." (Tr. 14). The ALJ further explained that Plaintiff's obesity "[did] not limit his ability to ambulate effectively," and that Plaintiff's "reported activities of daily living support a finding that he can sustain sedentary work." (Tr. 15). Thus, contrary to Plaintiff's contention, the ALJ did identify evidence that supported his conclusion, and built a logical bridge from that evidence to his conclusion. (ECF No. 9-1 at 6). Therefore, the ALJ complied with the Social Security rules and regulations in conducting the RFC assessment. Plaintiff's recycled, boilerplate argument is therefore entirely inapplicable in this case. *Cf. Powell v. Social Sec. Admin*, 2013 WL 2300971, at *2 (D. Md. May 23, 2013) (considering identical boilerplate arguments).

Plaintiff next argues that the ALJ failed to adequately consider the opinions of the State Agency physician who evaluated the Plaintiff's claim on the behalf of the Commissioner, Doctor Park. (ECF No. 9-1 at 8). Dr. Park opined that Plaintiff could "lift and carry up to 20 pounds, stand and walk up to 2 hours per workday, and perform limited postural activities." (Tr. 18). The ALJ gave Dr. Park's opinions "great weight," as they essentially limited the "claimant to sedentary work, which [was] consistent with the evidence discussed above." (Tr. 16). However, to fully account for the claimant's subjective complaints, the ALJ found that he should not lift over ten pounds or crawl. (Tr. 16). The ALJ included several of the limitations outlined by Dr. Park in the RFC, including Dr. Park's sitting, standing, and walking limitations. (ECF No. 17). Further, the ALJ accommodated Dr. Park's environmental restrictions by providing that Plaintiff should never work at unprotected heights or move around mechanical parts.

The ALJ gave the opinion of Frank Zimba, an examining physician, "partial weight." (Tr. 15; ECF No. 8-8). The ALJ noted that the determination that Plaintiff could "perform a reduced range of medium work with limited standing, walking, and postural activity," while consistent with the examination results and evidence, the claimant's consistent treatment for back pain indicates that he may be limited in his ability to carry up to 50 pounds." (Tr. 16). Consequently, the ALJ provided *additional* limitations beyond those provided for by Dr. Zimba. (ECF No. 8-8 at 314).

Plaintiff also contends that the ALJ failed to accord adequate weight to the opinion of John Kraus, MD. An ALJ must give a "treating physician's" opinion controlling weight as to the nature and severity of a claimant's impairments if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). Here, some of Dr. Kraus's opinion was given "great weight," as it was consistent with the claimant's diagnoses, pain history, and diagnostic imaging results . . . ." (ECF No. 16). However, additional limitations including ten-minute breaks every hour and limits on environmental exposure were not supported by evidence within the record and received little weight. *Id.* In assigning "little weight," to some of Dr. Kraus's opinion, the ALJ was not mandated to explicitly include any of the restrictions he recommended. *Powell*, 2013 WL 2300971, at *2. Contrary to Plaintiff's contention that the ALJ's rejection of Dr. Kraus' limitation was "so vague as to be meaningless," the ALJ explicitly outlined his rationale. (ECF No. 9-1 at 9). He noted that Dr. Kraus "conceded that he does not know how long the claimant can sit, stand, and walk in a full workday, and that he does not know how often his pain would be a distraction." (ECF No. 8-8 at 155). As the ALJ made explicit mention of how he discredited these diagnoses, the ALJ's analysis was sufficient. *See Fox v. Colvin*, 632 Fed. App'x 740, 755 (4th Cir. 2015) (remanding because ALJ made no mention of how he discredited the severe limitations provided for by the Doctor, and as inconsistent evidence abounds, the ALJ had a duty of explanation). Further, Plaintiff does not detail how the extreme limitations opined by Dr. Kraus were supported by the objective medical evidence. *Craig*, 76 F.3d at 590 (determining treating physician's opinion should be given significantly less weight if it is inconsistent with substantial evidence).

Accordingly, the ALJ's RFC assessment was supported by substantial evidence.

4

**SUBJECTIVE COMPLAINTS**

Second, Plaintiff contends that the ALJ erroneously evaluated his subjective complaints. (ECF No. 9-1 at 11). This is based on the argument that the ALJ's credibility assessment was not supported by substantial evidence. *Id.* at 11–13. The evaluation of a claimant's credibility as it relates to their subjective complaints of pain or other symptoms caused by their impairments is a two-step process. *Craig*, 76 F.3d at 594. First, the ALJ must determine whether there is objective evidence showing the existence of a medical impairment which could reasonably be expected to produce the pain or other symptoms alleged. *Nazelrod v. Astrue*, 2010 WL 3038093, at *3 (D. Md. Aug. 2, 2010). Second, the ALJ must evaluate the intensity and persistence of the claimant's pain or other symptoms alleged based on all the evidence in the record, including the claimant's testimony. *Id.* The ALJ must specifically refer to evidence informing his conclusion, including the reasons for rejecting evidence which contradicts his findings. *See, e.g., Gordan v. Schweiker*, 725 F.2d 231, 236 (4th Cir. 1984) (remanding because the ALJ failed to adequately explain basis of findings). An explanation is particularly critical when evaluating subjective symptoms. *Cf. Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985).

As relevant to Plaintiff's appeal, the ALJ determined that plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (Tr. 14). The ALJ concluded, however, the Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." *Id.* Plaintiff argues that, in reaching this conclusion, the ALJ did not properly evaluate his subjective complaints. (ECF No. 9-1 at 11). However, Plaintiff does not identify which of Plaintiff's complaints were improperly evaluated. *Id.* at 12. Further, Plaintiff failed to identify any critical or conflicting evidence which the ALJ overlooked in assessing his RFC. *Cf. Kukuloff v. Berryhill*, 2018 WL 6238100, at *12 (S.D.W.Va. Nov. 7, 2018). Specifically, the ALJ and provided a substantial breakdown of Plaintiff's subjective complaints relating to: impaired memory or judgment; side effects of medication; chronic backpain; knee pain; weakness in hands. (Tr. 13–16). These concerns are addressed in turn.

The ALJ properly evaluated Plaintiff's subjective complaints regarding Plaintiff's impaired judgment or memory impairment, and side effects of medication. In conducting this analysis, the ALJ expressly cited medical evidence contradicting Plaintiff's complaints, such as an observation from Dr. Zimba. (Tr. 14) (noting mental status screen was unremarkable, he was fully orientated, and his memory was intact). In addition, Plaintiff was noted to be "awake, alert, oriented, and in no acute distress, with appropriate speech, mood, and effect. There was no evidence of impaired judgment or memory impairment," which supported the ALJ's conclusion that Plaintiff's complaints about his memory are not entirely credible. *Id.*

Regarding the side effects of his medicine, Plaintiff reported dry mouth and sexual side effects, but no debilitating effects. (Tr. 14). Although he reported fatigue and depression when on gabapentin, the ALJ noted that this resolved with lower dosage, and therefore found that the record does not support Plaintiff's allegation of significant side effects. (Tr. 13).

5

Similarly, the ALJ properly evaluated Plaintiff's complaint regarding his chronic backpain. (Tr. 14–16). In February 2014, when Plaintiff presented to the emergency room, the x-rays did not reveal debilitating injuries. (Tr. 14). After receiving treatment for such back pain, in October 2015, Plaintiff underwent placement of a spinal cord stimulator to control his backpain. (Tr. 14; Ex 16F). By March of 2016, Plaintiff reported that the spinal stimulator had eliminated his radiating pain, and physical examination revealed flexed postures and low back tenderness, but his reflexes were intact, straight leg raise was negative, and his lower extremely strength was 5/5. (Tr. 14; Ex. 12F/17). Further, the ALJ noted that through 2017, Plaintiff had continued to rely on multiple doses of oxycodone for such pain, however, his lower extremity sensation, and reflexes were intact; he ambulates without difficulty and with no assistive devices. (Tr. 14; Ex. 17F at 65, 73; 18F at 23). The ALJ also cited diagnostic imaging and physical examinations, which did not support a finding that the Plaintiff's degenerative disc disease was disabling. (Tr. 14). Accordingly, to account for the claimant's chronic lower back pain, he was limited to a range of sedentary work with limited postural activity. *Id.* Lastly, although, Plaintiff contends that the ALJ relied upon Plaintiff's activities of daily living in determining his credibility (ECF No. 9-1 at 12), the ALJ permissibly cited to Plaintiff's own reports to contradict his allegation of his symptoms' severity, including that he is independent, attends to family pets, cares for himself, drives, and travels routinely with family. (Tr. 15).

The ALJ also properly evaluated Plaintiff's complaints regarding his knee. (Tr. 15). In doing so, the ALJ noted that Plaintiff had knee surgery in 2011, and as of February 2013, he had no effusion, good range of motion, and intact sensory and motor function. *Id.* Further, in March of 2014, Plaintiff received another series of injections in this knee, and physical examination at the time revealed active pain free range of motion, and normal lower extremity strength. *Id.* The ALJ also noted that after November 2014, Plaintiff only had occasional complaints of knee pain, and physical examination of the knees were unremarkable. *Id.*

In coming to such conclusion, the ALJ also relied on evidence of Plaintiff's daily activities, including Plaintiff's report. This constitutes substantial evidence in support of the ALJ's conclusion that plaintiff's complaints regarding back pain were only credible to the extent that they limit him to "sedentary work." *Id.* A review of the relevant evidence supports the ALJ's conclusion, and remand is therefore unwarranted.

Because there is substantial evidence to support the ALJ's findings and the findings were reached through application of the correct legal standards, Plaintiff's Motion for Summary Judgment is DENIED (ECF No. 9), Defendant's Motion for Summary Judgment (ECF No. 12) is GRANTED, and the Social Security Administration's judgment is AFFIRMED pursuant to sentence four of 42 U.S.C. § 405. The clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it is an Order of the Court and the Clerk is directed to docket it as such.

Sincerely yours,
/s/
J. Mark Coulson
United States Magistrate Judge